IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

VICTOR E. WHITE,

    Petitioner,

v.

    CIVIL NO.: WDQ-11-2801
    CRIMINAL NO.: WDQ-06-0575

UNITED STATES OF AMERICA,

    Respondent.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Pending is Victor E. White's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. No hearing is necessary. See Rule 8 of the *Rules Governing § 2255 Proceedings*. For the following reasons, the motion will be denied.

I. Background

On December 19, 2006, White was indicted for possession with intent to distribute cocaine and heroin, in violation of 21 U.S.C. § 841, and being a felon in possession of firearms, in violation of 18 U.S.C. § 922(g). On March 9, 2007, White pled not guilty to both counts.

On May 8, 2007, the Government notified White that it planned to introduce evidence of his prior drug convictions

under Fed. R. Evid. 404(b).[1] At a motions hearing on the first day of trial,[2] the Court granted the Government's motion to introduce evidence of White's 1991 conviction for possession with intent to distribute heroin.[3]

During the same hearing, White's attorney told the Court that the defense intended to prove that the guns attributed to White actually belonged to Ronald Ector, a friend of White's girlfriend. Trial Tr. 178:23-179:2, 557:20-24. Counsel said that he had "never spoken to" Ector, and Ector's attorney had said that he would deny owning the guns if called to testify. Id. 179:4-20. White still "want[ed] [Ector] on the witness stand," and defense counsel "[thought] [that] [he] should put

---

[1] See ECF No. 16. Rule 404(b) provides that "[e]vidence of a crime . . . is not admissible to prove a person's character" but "may be admissible for another purpose, such as proving . . . intent, . . . knowledge, . . . [or] absence of mistake[.]" Fed. R. Evid. 404(b). "On request by a defendant," the Government "must provide reasonable notice [before trial] of the general nature of any such evidence that the [Government] intends to offer at trial." Id.

[2] Trial began on July 30, 2007.

[3] Trial Tr., 171:16-18, 178:2-9; ECF No. 16. The Government asked "to read to the jury the statement of facts . . . from his . . . plea agreement" in the 1991 conviction, because "it [went] directly to [White's] absence of mistake, knowledge, and intent" in the charged offense. Trial Tr. 172:2-8. Defense counsel argued that the evidence was more prejudicial than probative. Id. 176:14-17, 177:15-178:1. The Court found that the conviction was remote because White had been imprisoned for the intervening 16 years, and the evidence would be more probative than prejudicial. Id. 178:2-9. At trial, less than 10 years had elapsed since White's release on the 1991 conviction. See Fed. R. Evid. 609(b).

2

him on" so that the jury would not think that the defense "was hiding" Ector. *Id.* 179:20-23.

At trial, Baltimore County Police Detectives Ernest Moore and Gina Socha testified that police executed a search warrant on May 18, 2006, at 4019 Amy Lane in Randallstown, Maryland. Trial Tr. 326:10-16, 390:25-291:2. White was in the master bedroom, and told police that he possessed about $2,100, and had cocaine and heroin in a jacket on the chair. *Id.* 326:21-22, 330:4-9. Detective Moore testified that police found cocaine and heroin in the jacket pocket, and $2,352, "paraphernalia and some sifters, some unused Ziplock baggies," and packages of mannite[4] in the bedroom. *Id.* 330:24-331:7, 332:14-18, 333:19-21. Detective Socha testified that police also found a digital scale and bags of white powder in a nightstand, and a red bag in the closet that contained a .45-caliber semi-automatic pistol, and a .32-caliber revolver. *Id.* 396:19-20, 399:5-9, 401:16-19. The closet contained men's clothing. *Id.* 401:20-22.

Detective Moore testified that he asked White "who the drugs, money, and guns belonged to," and White said that "everything in the residence belonged to him," and that "[n]o one else in the [home] was dealing" drugs. Trial Tr. 337:8-15. Detective Moore further testified that he "talked with Mr. White

---

[4] Mannite is commonly used as a cutting agent for drugs. Trial Tr. 333:23-24 (Detective Moore testimony).

3

about his prior federal convictions" and "just recently getting out of federal prison," and White replied, "I'm going away for a long time." *Id.* 337:4-8.

On the second day of trial, the Government read the following stipulation to the jury:

> At the time of the alleged criminal conduct in this case, Victor White previously had been convicted of possession with the intent to distribute heroin, a crime punishable by more than one year incarceration, and his civil rights had not been restored[.][5]

The Government also read the statement of facts from the plea agreement in White's 1991 conviction for possession with intent to distribute heroin:

> Statement of facts. Victor White and Andre Parrotte, Criminal Number K-90-072. If this case had gone to trial, the Government would have proved the following facts:
>
> On February 15, 1990, federal agents executed a search warrant at the apartment of Victor White and seized two automobiles owned by White. White and his girlfriend, Sandra Miller, were the only occupants of the apartment.
>
> The agent seized the following items at the time of the search: Substantial quantities of narcotics paraphernalia, including mannite, a triple beam balance scale, measuring spoons from the bedroom dresser, and a plastic portable scale. Agents recovered $54,824 in cash from a safe in White's closet together with eight guns, which were found in various locations in the apartment. The agents also seized a clear plastic bag containing suspected heroin. Deborah Little, a forensic chemist for the

---

[5] Trial Tr. 436:21-437:2. The stipulation was signed by Assistant U.S. Attorney Bryan Giblin, defense counsel Harold Glaser, and White. *Id.* 437:2-3.

Mid-Atlantic Laboratory of DEA, analyzed the powder and determined it to be 28.28 grams of 84% pure heroin.

Robert Bruce Dowdy would have testified at the trial of White and stated that he previously distributed heroin to Victor White and Andre Parrotte, who were drug partners. He would have testified that he had dealt with both men on several occasions and that they acted on behalf of each other and their partnership.

The testimony relating to the partnership of Parrotte and White would have been corroborated by the wiretap conversations which were intercepted during the course of the investigation of the Dowdy organization. A specific example of such conversations would have been played at a joint trial of Parrotte and White.

On December 6th, 1990, Andre Parrotte, who was at the Oak Haven Circle apartment of Dowdy, the apartment which was used to cut and stash Dowdy's drugs, called his partner, Victor White. Parrotte asked him if they wanted to get, quote, two of them, meaning two ounces of raw heroin. White, after some coded discussion, agreed that Parrotte ought to get the two.

Sergeant Richard Barbado, a specially deputized Drug Enforcement Administration officer who supervised the wiretap, would have testified that, in his experience, that call indicated that White and Parrotte, partners, who were purchasing two ounces of raw heroin, which they would later cut to street strength for distribution.

The stipulated statement of facts is an accurate recitation of the evidence which the Government would have provided and which the Government would have proved if the case had gone to trial, and that is signed by Victor White and William Monfried, attorney for Mr. White.

Trial Tr. 437:4-439:3.

White's girlfriend, Angelita Valentine, testified that she lived at 4019 Amy Lane, and White periodically stayed there.

Trial Tr. 553:4-5, 556:23-25. Valentine further testified that Ector had lived with her for "a few months" and had given her a red bag with two guns, which she had hidden in her closet. Id. 557:18-563:4. She said that she had not told White about the guns. Id. 560:24-561:2. Valentine also denied seeing any drugs in the house when White stayed there. Id. 567:18-568:5.

During a recess after Valentine's testimony, Ector's attorney told the Court that Ector would testify but would deny owning the guns attributed to White. Trial Tr. 591:8-21. When trial resumed, Ector testified that he had brought a red bag to Valentine's house but had never given her any guns. Id. 598:25-599:2, 600:18-601:19.

Defense counsel called White to the stand and asked him to read aloud "that portion . . . of the plea agreement" from his 1991 conviction that the Government had not read to the jury. Trial Tr. 641:15-16. White read aloud parts that provided the maximum sentence, his offense level under the advisory sentencing guidelines, his admission of guilt, and his understanding that the charged offense had involved 28 grams of heroin and "possession of a dangerous weapon." Id. 643:2-645:5. The excerpts also provided that White had understood that the Court was not bound by the plea agreement, and the parties had reached "no agreement as to his criminal history." Id. 645:6-22. White did not read aloud two paragraphs about his

6

classification as "a violent offender or a career criminal." *Id.* 642:4-20.

White testified that he had pled guilty in the 1991 case because he "was guilty" and "took [his] punishment." Trial Tr. 638:9-12. He further testified that he was innocent of the pending charges and had proceeded to trial because he "refuse[d] to be lied on and to be persecuted for something [he was] not guilty of." *Id.* 638:13-15. He denied that he had told police that any of the drugs or guns belonged to him. *Id.* 676:5-8.

The Court instructed the jurors to consider White's prior conviction "for the limited purpose of helping [them] decide how much of [White's] testimony to believe and what weight, if any, to give it, and for the purpose of determining whether [White] acted knowingly and intentionally and not because of some mistake, accident, or other innocent reason." Trial Tr. 831:10-14.

On August 1, 2007, the jury convicted White on both counts. At sentencing on October 22, 2007, the Court found that White was an armed career criminal[6] and sentenced him to concurrent

---

[6] The Court adopted the finding in the sealed Pre-Sentence Report that White was an armed career criminal because he had four prior felony convictions for rape (1976), robbery with a deadly weapon (1978), distribution of cocaine (1985), and possession with intent to distribute heroin (1991). ECF No. 26 (Judgment and Sealed Statement of Reasons); PSR 8. Under the Armed Career Criminal Act ("ACCA"), an offender is an armed career criminal and subject to an enhanced sentence if he violates 18 U.S.C. §

7

terms of 294 months imprisonment. Sentencing Tr. 11:19-25.

On October 26, 2007, White filed a notice of appeal.[7] On January 20, 2009, the Fourth Circuit affirmed his conviction.[8] On October 4, 2010, the Supreme Court denied White's petition for writ of certiorari. *White v. United States*, 131 S.Ct. 360 (2010).

On September 29, 2011, White filed this § 2255 motion. ECF No. 42. On March 2, 2012, the Government opposed the motion. ECF No. 49.

II. Analysis

White argues that his trial attorney provided ineffective assistance of counsel because he (1) stipulated to White's prior heroin conviction, (2) impeached him at trial with his prior conviction, (3) failed to interview Ector before calling him as a witness, (4) did not "sufficiently prep[]" Valentine before she took the stand, (5) failed to properly investigate and call Probation Officer Leon Epps to testify, and (6) did not challenge the constitutionality of the Court's application of

---

922(g) and "has three previous convictions ... for a violent felony or serious drug offense, or both, committed on occasions different from one another." *See* 18 U.S.C. § 924(e)(1); U.S. Sentencing Guidelines Manual § 4B1.4.

[7] ECF No. 27. White argued that the Court had erred in admitting evidence of his prior conviction for possession with intent to distribute heroin. *See* ECF No. 38 at 2.

[8] ECF No. 38. The Fourth Circuit's judgment took effect on February 11, 2009. ECF No. 39.

ACCA at sentencing. ECF No. 42 at 3-14.

A. Ineffective Assistance of Counsel

The Sixth Amendment guarantees the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). Under *Strickland*, White must prove that counsel's performance: (1) was deficient and (2) prejudiced his defense. *Id.* at 687; *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010).

Deficient performance requires White to show that his attorney made errors so serious that the "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 686, 689. A court must be "highly deferential" in its review of an attorney's conduct, observing a "strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance." *Id.* at 689. White "must overcome the presumption that, under the circumstances, the challenged action must be considered sound trial strategy." *Id.* (internal quotation marks omitted).

To demonstrate prejudice, White must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If a defendant cannot prove prejudice, "a reviewing court need not consider the performance prong." *Fields v. Attorney Gen.*, 956 F.2d 1290, 1297 (4th Cir. 1992) (*citing Strickland*, 446 U.S. at 697).

1. Stipulating To A Past Conviction

White argues that his trial attorney "eliminated any possibility of a fair trial" by stipulating to his 1991 conviction for possession with intent to distribute heroin. ECF No. 42 at 4. He contends that it "unfairly exposed [him] to repeat and extensive permissible cross examination," and "the similarities between the stipulated prior conviction and the conduct charged in the instant case . . . jeopardize[d] [his] testimony beyond any reasonable rehabilitation." *Id.*

The Government counters that trial counsel's stipulation was "simply a matter of sound trial tactics," and White suffered no prejudice. ECF No. 49 at 4-6.

White has failed to show that the stipulation prejudiced his defense. *See Strickland*, 466 U.S. at 694. The Government must prove that a defendant was previously convicted of a felony in order to establish a violation of § 922(g). *United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995) (en banc). Thus, had defense counsel not stipulated to White's 1991 conviction, the Government would have been free to present other evidence of that conviction.[9] Because the stipulation did not prejudice

---

[9] *See United States v. Rhodes*, 32 F.3d 867, 871 (4th Cir. 1994) ("when a defendant does not stipulate the fact of his prior conviction, the Government must prove it"). Although the Government contends that it would have been "free to prove all of [White's] prior convictions," *see* ECF No. 49 at 5, "proof of more than one conviction in a § 922(g) prosecution is generally

White's defense, it was not ineffective assistance of counsel.[10]

### 2. Reading The Plea Agreement During White's Testimony

White argues that his attorney impeached him by having him read aloud the plea agreement from his 1991 conviction. ECF No. 42 at 3, 9. He contends that "the prejudicial effect of the prior convictions[11] outweighed their probative value," and there was no "sound trial strategy" in having him read the plea agreement because "it had no probative value, no mitigating circumstances, and placed [him] in the most damaging light imaginable." *Id.* at 9-10.

The Government counters that reading aloud the plea agreement "had no effect on the outcome of the proceedings" because "the fact of the prior conviction and the plea agreement were already in evidence" when White took the stand. ECF No. 49

---

viewed as unnecessary, cumulative, and prejudicial" under Fed. R. Evid. 403. *Rhodes*, 32 F.3d at 876 n.3 (Hamilton, J., concurring). Under Rule 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of," *inter alia*, "unfair prejudice" or "needlessly presenting cumulative evidence." Fed. R. Evid. 403.

[10] *See Strickland*, 466 U.S. at 694. White's argument that the stipulation "jeopardize[d] [his] testimony" and "unfairly exposed [him] to . . . cross examination" is without merit. *See* ECF No. 42 at 4. A defendant who testifies is "rightly subject to vigorous cross-examination," *see United States v. Najjar*, 300 F.3d 466, 474 (4th Cir. 2002), regardless of whether he has stipulated an element of the charged offense.

[11] Although White refers to "direct examination with use of prior drug and firearm offenses," *see* ECF No. 42 at 3, the motion addresses only the 1991 conviction, *see id.* at 4-10.

at 6-7.

White has not shown any prejudice from reading the plea agreement during his testimony. By the time he took the stand, the jury had already heard the parties' stipulation that he had been convicted of a felony and the statement of facts from the plea agreement in his 1991 conviction. *See* Trial Tr. 171:16-18, 178:2-9, 437:4-439:3. The Fourth Circuit has affirmed that the probative value of the statement of facts outweighed its prejudice.[12] The parts of the plea agreement that White read aloud were no more prejudicial: they merely provided neutral details such as the maximum sentence White faced, and his offense level under the advisory sentencing guidelines. *See* Trial Tr. 643:2-645:22. White did not read aloud the provisions that described him as "a violent offender or a career criminal."

---

[12] The Fourth Circuit held that,

> [b]ecause White pled not guilty to the crimes with which he was charged, he placed his mental state in issue, and the Government was authorized to offer other evidence of prior bad acts tending to establish his intent and knowledge regarding the drugs found in the apartment where he stayed on a regular basis . . . . [H]is prior heroin-related trafficking conviction was relevant to establish his knowledge of the heroin trade (which also corroborated his confession to the officers) and his intent to sell the drugs at issue . . . . [T]he district court's limiting instruction to the jury, as well as the initial Rule 404(b) notice that was given to White by the Government, was sufficient to reduce any prejudicial effect the evidence may have had.

*United States v. White*, 307 F. App'x 764, 765 (4th Cir. 2009).

*Id.* 642:4-20. Because White has not shown that the jury's verdict would have been different had he not read aloud portions of the plea agreement, this claim is not a basis for relief.[13]

### 3. Not Interviewing Ector Before Calling Him As A Witness

White argues that his attorney provided ineffective assistance by not interviewing Ector or contacting his lawyer before calling Ector to the witness stand. ECF No. 42 at 10-11. White concedes that he "requested counsel to call . . . Ector," but contends that "counsel would have been in a much better position to make an intelligent and informed decision as to whether he should be called to testify" had "the proper investigation . . . taken place." *Id.*

The Government counters that counsel was not deficient because White and his attorney knew that Ector would contradict Valentine's testimony, White requested that Ector testify, and calling Ector furthered a "particular trial strategy." ECF No. 42 at 7-8. The Government further argues that White has not

---

[13] *See Strickland*, 466 U.S. at 694. White has also failed to show that his attorney acted unreasonably by asking him to read the plea agreement aloud. *See id.* at 686, 689. Counsel apparently did so to allow White to testify that, because he had accepted responsibility in his 1991 conviction, his refusal to do so in this case showed that he was not guilty. *See* Trial Tr. 638:9-15 (White's testimony that he had pled guilty in the 1991 case because he "was guilty" and "took [his] punishment," and he had proceeded to trial in this case because he "refuse[d] to be lied on and to be persecuted for something [he was] not guilty of"). White has not overcome the presumption that this was "sound trial strategy." *See Strickland*, 466 U.S. at 689.

shown that the outcome of the trial would have been different had counsel not called Ector to testify. *Id.*

White has not shown that his attorney provided ineffective assistance by not interviewing Ector before calling him as a witness. Counsel had spoken to Ector's attorney and knew that Ector would deny owning the guns. *See* Trial Tr. 179:4-20; 591:8-21. White has not explained what more his attorney could have learned by interviewing Ector before trial. Moreover, White told counsel that he wanted Ector to testify, and his attorney agreed that the jury may have thought that the defense "was hiding" Ector if he did not take the stand. *Id.* 179:20-23. Ector admitted taking a red bag to Valentine's apartment; this testimony corroborated part of her testimony. Thus, counsel had a sound trial strategy for calling Ector to testify. *See Strickland*, 466 U.S. at 689. Because White has not shown that his attorney acted unreasonably, this claim is not a basis for relief.

### 4. Preparing Valentine Before She Testified

White contends that his attorney did not "sufficiently prep[]" Valentine before she took the stand and "blindsided" her by asking about "the drugs and drug paraphernalia that were discovered in the bedroom of her home." ECF No. 42 at 11. He argues that "[t]his line of questioning . . . unfairly opened the door for the prosecution and exposed . . . Valentine to

cross-examination which destroyed her credibility."[14]

Although an attorney may be ineffective for failing to prepare a witness before she testifies,[15] White has provided no evidence that Valentine was not "sufficiently prepped," or that his attorney "blindsided" her with questions about the drugs seized from her home.[16] The transcript does not show that Valentine hesitated or "wavered in her trial testimony" because of defense counsel's questions,[17] and White's bare assertions to the contrary are insufficient to overcome the strong presumption that his attorney's "strategy and tactics f[e]ll within the wide range of reasonable professional assistance."[18]

---

[14] ECF No. 42 at 11.  The Government did not respond to this argument.

[15] See United States v. Rhynes, 218 F.3d 310, 319 (4th Cir. 2000) ("No competent lawyer would call a witness without appropriate and thorough pre-trial interviews and discussion.").

[16] See ECF No. 42 at 11.

[17] See Trial Tr. 567:18-568:5; Wolford v. United States, 722 F. Supp. 2d 664, 694 (E.D. Va. 2010) ("record reflect[ed] that trial counsel's preparation of [the defendant] for her trial testimony was not sufficiently appropriate and thorough" when he failed to discuss "any of the specific questions that he planned to ask her" or prepare her for cross-examination, and the defendant "wavered in her trial testimony") (internal quotation marks omitted).

[18] See United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) (internal quotation marks omitted).  See also Wadford v. United States, Case No. 06-1294-PMD, 2011 WL 349808, at *5 (D.S.C. Aug. 9, 2011) (ineffective assistance claim was "without merit" when petitioner "offer[ed] no evidence supporting [his] contention" that counsel "failed to properly interview and/or prepare wit-

Moreover, White has not shown that the jury's verdict likely would have been different had his attorney altered the manner in which he prepared Valentine. *See Strickland*, 466 U.S. at 694. The Government presented overwhelming evidence of White's guilt, including several police officers' testimony that they had found White in the same room as drugs, money, and guns, and White had confessed that "everything" belonged to him. *See* Trial Tr. 326:10-22, 330:4-333:20, 337:4-8, 390:25-291:2, 396:19-20, 399:5-9, 401:16-19. Thus, White has not shown that his attorney's preparation of Valentine--or lack thereof-- prejudiced his defense. *See Strickland*, 466 U.S. at 694. This claim is not a basis for relief.

5. Investigating And Calling Epps To Testify

White argues that his attorney failed to "properly investigate and call [Probation Officer] Leon Epps to testify." ECF No. 42 at 11-12. He contends that counsel should have "acscertain[ed] the statements that [White] purportedly made to [Epps] denying any knowledge of the firearms in the closet,

---

nesses"); *Connor v. United States*, Case No. 04-cr-27-FL, 2010 WL 4483325, at *10 (E.D.N.C. Sept. 21, 2010) (petitioner's claim that his attorney, *inter alia*, "did not prepare a witness properly" was "precisely the type of tactical second guessing that is generally disfavored under the *Strickland* standard"); *Wagner v. United States*, 377 F. Supp. 2d 505, 509 (D.S.C. 2005) ("mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue"), *aff'd*, *United States v. Wagner*, 88 F. App'x 593 (2004) (per curiam).

while admitting knowledge of the [drugs] and related items found." *Id.* at 12. White argues that counsel's failure "plainly and irreparably prejudiced [him] at trial, because there is no way to accurately determine what the jury would have believed about the credibility of the police officers . . . if they had heard the testimony of Probation Officer Epps." *Id.*

The Government counters that White has failed to explain who Epps is, or whether he told his attorney about his statements to Epps. ECF No. 49 at 9. The Government further contends that White has not shown that Epps's testimony would have changed the outcome of the trial. *Id.*

White has not shown that his attorney was ineffective by not investigating White's statements to Epps, or calling Epps to testify. White has not explained how he came to speak to Epps, what White told him and when, and whether White told his lawyer about Epps. White appears to concede, however, that Epps would have testified that White had admitted that the drugs were his. *See* ECF No. 42 at 12. Thus, it would have been "sound trial strategy" to keep the jury from hearing testimony that implied White's guilt on at least one of the charges. *See Strickland*, 466 U.S. at 689. Moreover, White has not shown that, had counsel called Epps to testify, there is a reasonable probability that the jury's verdict would have been different. *See id.* at 694. Merely speculating that "there is no way to . .

17

. determine what the jury would have believed," see ECF No. 42 at 12, does not establish the prejudice necessary to prove ineffective assistance of counsel. See id. Accordingly, this claim is not a basis for relief.

      6. Applying ACCA at Sentencing

      Finally, White argues that his attorney provided ineffective assistance by failing to challenge his sentence as a violation of the Ex Post Facto Clause. ECF No. 42 at 12-14. White contends that the Court improperly enhanced his sentence based on prior convictions that predated ACCA. Id. at 13-14.

      The Government counters that his attorney did not provide ineffective assistance because the Court's application of ACCA was not ex post facto: White's conviction in this case occurred after the sentencing statute had taken effect. ECF No. 49 at 10.

      The Constitution[19] "prohibits laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'"[20] In determining whether a law or its application is ex post facto, "[t]he date of the present offense is determinative." United States v. Etheridge, 932 F.2d 318, 323 (4th Cir. 1991). A court's use of prior convictions to enhance a sentence

---

[19] U.S. Const., Art. I, § 9, cl. 3 ("No . . . ex post facto law shall be passed").

[20] United States v. Brady, 438 F. App'x 191, 194 (4th Cir. 2011) (quoting Collins v. Youngblood, 497 U.S. 37, 43 (1990)).

under ACCA "does not violate the constitutional prohibition against 'Ex Post Facto' laws"--even if "such prior convictions were entered before the effective date of ACCA." *United States v. Presley*, 52 F.3d 64, 68 (4th Cir. 1995).

White's criminal conduct and conviction in this case were more than 20 years after ACCA took effect.[21] Thus, the Court's application of ACCA to White's sentence was not ex post facto. *See Presley*, 52 F.3d at 68. Given *Presley*, it was reasonable for White's attorney not to challenge the ACCA enhancement, *see Strickland*, 466 U.S. at 686, 689; this claim is not a basis for relief.

B. Certificate of Appealability

A certificate of appealability ("COA") must issue before a petitioner may appeal the Court's decision in a 28 U.S.C. § 2255 case. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to

---

[21] *See* H.R. Rep. No. 1073, 98th Cong., 2d Sess. (1984), reprinted in 1984 U.S.C.C.A.N. 3661.

deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotations omitted). Denial of a COA does not prevent a petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

Because White has not made a substantial showing of the denial of his constitutional rights, this Court will not issue a COA.

III. Conclusion

For the reasons stated above, White's motion to vacate, set aside, or correct sentence will be denied.

_6/14/12_  
Date

_/s/ William D. Quarles, Jr._  
William D. Quarles, Jr.  
United States District Judge